# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 12-84V
Filed: May 30, 2014

| | |
|---|---|
| * * * * * * * * * * * * * * | UNPUBLISHED |
| SHARON E. RICARD, * | |
| * | Special Master Gowen |
| Petitioner, * | |
| * | |
| v. * | Dismissal Decision; Failure to |
| * | Produce Expert Reports; Order to |
| SECRETARY OF HEALTH * | Show Cause; Tetanus, Diptheria, |
| AND HUMAN SERVICES, * | and Pertussis (Tdap) Vaccine; |
| * | Influenza (Flu) Vaccine; Disfiguring |
| Respondent. * | Lump on Upper Arm. |
| * * * * * * * * * * * * * * | |

Sharon E. Ricard, *pro se*, Antioch, CA.
Ryan Pyles, United States Dept. of Justice, Washington, D.C., counsel for respondent.

## DECISION[1]

On February 6, 2012, Ms. Ricard (petitioner) filed a petition, *pro se*, pursuant to the National Vaccine Injury Compensation Program.[2] Ms. Ricard alleged that she suffered from a disfiguring lump on her upper left arm as a result of a Tetanus, Diptheria, and Pertussis ("Tdap") vaccination she received on May 21, 2010. Petition ("Pet.") at 1. The information in the record does not show entitlement to an award under the Act. For the reasons that follow, this case is dismissed for insufficient proof.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, the undersigned intends to post this decision on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). In accordance with Vaccine Rule 18(b), a party has 14 days to identify and move to redact medical or other information, that satisfies the criteria in § 300aa-12(d)(4)(B). Further, consistent with the rule requirement, a motion for redaction must include a proposed redacted decision. If, upon review, the undersigned agrees that the identified material fits within the requirements of that provision, such material will be redacted from public access.

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2006) (Vaccine Act or the Act). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C. § 300aa.

## I.   Factual Background

Ms. Ricard was born on December 31, 1961.  Pet. Ex. 6 at 3.  She received a Tdap vaccination on May 21, 2010, and a flu vaccine on October 13, 2010.[3]  Pet. Ex. 3 at 1; Pet. Ex. 8 at 1; Pet. Ex. 7a at 1.[4]  It is unclear, from the medical records that have been filed, whether petitioner was vaccinated in her right or her left arm.

According to a document authored by petitioner and filed as Exhibit 1, she received the October 13, 2010 flu shot in her left arm and subsequently "experience[d] some discomfort, with soreness, head ache, fever, and redness with a slight bump, at first, for a few days."  Pet. Ex. 1 at 1-2.  By "the end of December 2010," petitioner noticed a "small to medium bump" under her skin, which she believed resulted from the flu vaccination.  Id.

Petitioner states that she made an appointment with her primary care physician, Dr. Piriyatharisani Gunanayagam, on February 17, 2012,[5] for an assessment of the pain she was experiencing in her left arm.  Id. at 2.  Petitioner asked Dr. Gunanayagam whether the pain was caused by the flu shot, and Dr. Gunanayagam replied in the negative.  Id.

According to petitioner, her arm was examined by physical therapist Ryszard Hajduczek on May 19, 2011.  Id. at 3.  Petitioner states that Mr. Hajduczek "was not sure about the flu shot or not."  Id.

Petitioner had a third medical appointment regarding the mass on her left arm on February 27, 2012.  Id.  According to petitioner, Elvira Parks, a physician's assistant, opined that

---

[3] It is unclear whether petitioner is alleging that her injuries were caused by the Tdap vaccination she received in May of 2010 or the flu vaccination she received in October of 2010.  The petition alleges that the vaccine at issue is a tetanus vaccine, and the medical records confirm that petitioner received a tetanus vaccine on May 21, 2010.  However, petitioner's Exhibit 1, which is a document authored by petitioner on September 13, 2012, identifies the vaccine at issue as a "flu shot," and the medical records confirm that a flu shot was administered on October 13, 2010.  One of Special Master Vowell's Status Conference Orders refers to the relevant vaccine as a flu vaccine.  See Order, dated September 17, 2013, at 1.

It is ultimately irrelevant, for purposes of the outcome reached in this case, whether the vaccine at issue was a Tdap vaccine or a flu vaccine.

[4] Petitioner filed two sets of exhibits with duplicate exhibit numbers.  The first set of exhibits, filed on September 4, 2013, will be referred to as Pet. Ex. 1 through Pet. Ex. 7; the second set of exhibits, filed on November 14, 2013, will be referred to as Pet. Ex. 1a through Pet. Ex. 7a.

[5] February 17, 2012 was approximately 16 months after the flu vaccine was administered and approximately 21 months after the Tdap vaccine was administered.  Petitioner filed an "After Visit Summary" associated with this appointment which contains no substantive information about the appointment.  Pet. Ex. 1a at 29.

the mass was, in fact, a lipoma.[6]

Petitioner ultimately underwent a biopsy and surgical removal of the lump in March of 2012. Id. at 4. On the basis of the biopsy, Dr. Christopher Solis confirmed that the lump was a "benign (non cancer) lipoma." Pet. Ex. 11 at 2.[7]

On April 26, 2012, petitioner sent an e-mail to Dr. Solis in which she stated that her "internal arm [was] a[] little sore," and asked if this was normal. Pet. Ex. 11 at 6. Dr. Solis replied that it was. Id.

On June 1, 2012, petitioner sent Dr. Solis another email, noting that she had been "getting needle sensation [and] numbness running down [her] left arm." Id. at 7. Petitioner believed that her symptoms were "due to [her] surgery on [her] left arm." Id. In response to Dr. Solis' request for more information, petitioner stated that the sensation was "outside of [her] left [a]rm," "[s]houting [sic] pain on top of [her] hand, [t]he pointer finger, middle finger and [her] thumb," and that was particularly bothered by the numbness she felt. Id. at 8.

According to petitioner, she had a final appointment with Dr. Solis on July 9, 2012, during which he diagnosed her with carpal tunnel syndrome. Pet. Ex. 1 at 5. At a July 18, 2012 appointment with "Nero lab Electromagraphy NB," petitioner says, her carpal tunnel diagnosis was confirmed. Id.

Aside from email correspondence between petitioner and her doctors, the medical records contain no substantive information regarding the doctors' impressions of petitioner's injury. Moreover, petitioner has filed no evidence that any of her treating physicians attributed her injury to either of her vaccinations.

## II.   **Procedural Background**

This case was initially assigned to Special Master Zane, who held status conferences on June 15, 2012, August 10, 2012, December 18, 2012, February 13, 2013, May 22, 2013, and July 17, 2013. At the initial status conference on June 15, 2012, petitioner appeared *pro se* and was given the opportunity to search for legal representation prior to the imposition of a deadline for the filing of her medical records. Order, dated June 18, 2012, at 1. At the August 9, 2012 status conference, petitioner again expressed an interest in seeking legal advice, and she was given the opportunity to do so. Order, dated August 10, 2012, at 1-2. At the December 18, 2012 status conference, petitioner stated that she had contacted an attorney "who may represent her," and that she was providing the attorney with information about her case. Order, dated December 19,

---

[6] A lipoma is a "benign, soft, rubbery, encapsulated tumor of adipose tissue, usually composed of mature fat cells." Dorland's Illustrated Medical Dictionary, 32nd Edition ("Dorland's") at 1063.

[7] Dr. Solis' diagnosis is taken from an email that petitioner received on April 4, 2012 and later filed as an exhibit. See Pet. Ex. 11 at 2. The date on which the biopsy took place is unclear from the medical records that have been filed.

2012, at 1.

Petitioner still had not retained counsel or filed any medical records at the time of the fifth status conference, which was held on May 22, 2013, approximately 15 months after the petition was filed. Order, filed May 23, 2013, at 1. Petitioner was warned that if she had not retained counsel by the time of the next status conference, she should "come prepared to set a schedule for the filing of pertinent medical records and obtaining an expert report." Id. Petitioner was advised of her burden of proof and of of her responsibilities with respect to participation in the proceedings and submission of documents to the court. Id. at 2-3.

At the next status conference, which was held on July 17, 2013, petitioner again appeared *pro se*. Order, dated July 19, 2013, at 1. Petitioner stated that she was still attempting to retain counsel. Id. In light of the length of time that had elapsed since the petition was filed, Special Master Zane set deadlines for petitioner to file medical records. Id.

Petitioner filed Exhibits 1 through 11 on September 4, 2013. That same day, the case was reassigned from Special Master Zane to Special Master Vowell.

During a status conference on September 16, 2013, Special Master Vowell "informed petitioner that some of her medical records appear to be incomplete." Order, dated September 17, 2013, at 1. Special Master Vowell also noted that there did not appear to be "any notation associating petitioner's flu vaccination with her injury." Id. Special Master Vowell cited Section 300aa-13 of the Vaccine Act and "informed petitioner that [she] may not make a finding in her favor based on her claims alone, 'unsubstantiated by medical records or a medical opinion.'" Id. With respect to her search for an attorney, petitioner stated that her "efforts to obtain representation [had] been unsuccessful due to the same evidentiary concerns [Special Master Vowell] conveyed during the status conference." Id.

Special Master Vowell ordered respondent to file a status report regarding the completeness of petitioner's medical records, and directed petitioner to file a status report by October 31, 2013, with an update on her search for an attorney. Order, dated September 17, 2013, at 1. Petitioner was "reminded that if she has not retained an attorney and/or found a doctor to opine on her behalf in favor of vaccine causation by the date of the status conference [to be set in mid-November 2013]," Special Master Vowell intended to set a deadline for her to file an expert report. Id. at 2.

On September 30, 2013, respondent filed a status report in which she identified several sets of outstanding medical records. Petitioner was directed to file the outstanding records by November 18, 2013. Order, dated October 2, 2013, at 2. Petitioner was ordered to file a status report regarding her search for an attorney by October 31, 2013. Id.

Petitioner filed a status report on November 1, 2013, in which she stated that she had again been in contact with an attorney, and that she was in the process of deciding whether to retain an expert. On November 14, 2013, petitioner filed additional medical records, including email correspondence with her physicians, as well as post-visit summaries, from 2008 to 2012. See Pet. Ex. 1a – 7a.

4

On November 22, 2013, Special Master Vowell issued an Order directing petitioner to file an expert report by February 20, 2014. Petitioner filed neither an expert report nor a motion for extension of time by this deadline, though she did contact Special Master Vowell's chambers with an oral request for an extension; petitioner was directed to file a motion for extension in writing, pursuant to Vaccine Rule 19. On March 4, 2014, Special Master Vowell issued a Show Cause Order directing petitioner to file an expert report, or "otherwise show cause for why this case should not be dismissed," by April 2, 2014. Order, dated March 4, 2014, at 2.

The Court clerk received a faxed request for additional time from petitioner on March 10, 2014, and this case was reassigned to the undersigned on March 18, 2014. On the basis of petitioner's faxed request, the undersigned granted petitioner until May 5, 2014 to file her expert report or otherwise demonstrate compliance with the Show Cause Order. Order, dated March 25, 2014, at 2. The undersigned warned petitioner that if her expert report was not filed by May 5, 2014, the case would probably be dismissed.

To date, petitioner has filed neither an expert report nor a motion for extension of time to file her expert report.

## III.   Requirement for an Expert Report or Supportive Medical Records

When a petitioner fails to comply with Court orders to prosecute her case, the Court may dismiss the case. Sapharas v. Sec'y of Health & Human Servs., 35 Fed. Cl. 503 (1996); Tsekouras v. Sec'y of Health & Human Servs., 26 Cl. Ct. 439 (1992), aff'd, 991 F.2d 819 (Fed. Cir. 1993) (table); Vaccine Rule 21(c); see also Claude E. Atkins Enters., Inc. v. United States, 889 F.2d 1180, 1183 (Fed. Cir. 1990)(affirming dismissal of case for failure to prosecute for counsel's failure to submit pre-trial memorandum); Adkins v. United States, 816 F.2d 1580, 1583 (Fed. Cir. 1987) (affirming dismissal of cases for failure of party to respond to discovery requests). Ms. Ricard has failed to obtain counsel and, more importantly, she has failed to obtain an expert report or other sufficient medical documentation in support of her claim of a vaccine-caused injury. Thus, the undersigned finds it appropriate to dismiss this case for failure to prosecute.

Additionally, to prove causation, petitioner must "show by preponderant evidence that the vaccination brought about [the] injury by providing: (1) a medical theory causally connecting the vaccination and injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of proximate temporal relationship between vaccination and injury." Moberly, 592 F.3d at 1322 (citing Althen v. Sec'y of Health & Human Servs., 418 F.3d 1274, 1278 (Fed. Cir. 2005). Petitioner bears the burden of proving a prima facie case by a preponderance of the evidence. See 42 U.S.C. § 300aa-13(a)(1)(A); see also Moberly v. Sec'y of Health & Human Services, 592 F.3d 1315, 1320 (Fed. Cir. 2010).

The preponderance standard applies to each element of petitioner's proof. For example, with regard to the medical theory, the theory must be "persuasive" – that is, specific to petitioner's case and supported by a "reputable", i.e. reliable, scientific or medical explanation. Moberly, 592 F.3d at 1322 (holding that "[a] petitioner must provide a reputable medical or scientific explanation that pertains specifically to petitioner's case"); Althen, 418 F.3d at 1278

5

(holding that "[a] persuasive medical theory is demonstrated by 'proof of a logical sequence of cause and effect showing that vaccination was the reason for the injury[,]' the logical sequence being supported by 'reputable medical or scientific explanation[,]' . . ."(citing <u>Grant v. Sec'y of Health & Human Servs.</u>, 956 F.2d 1133, at 1148 (Fed. Cir. 1992)).

A petitioner may not be awarded entitlement under the Vaccine Act based on petitioner's claims alone.  Rather, the petition must be supported by either medical records or by the opinion of a competent physician.  <u>See</u> 42 § 300aa-13(a)(1).  In this case, because the medical records do not support petitioner's claim, a medical opinion must be offered in support.

Petitioner has not offered a supportive expert report in support of her claim.  In addition, there is no evidence that any of Ms. Ricard's treating physicians attributed any of her conditions to either her Tdap or her flu vaccinations.  There is also no evidence in the record of appropriate temporal relationship between Ms. Ricard's vaccination(s) and the onset of her injuries.

**IV.**    <u>**Conclusion**</u>

Therefore, Ms. Ricard's petition is hereby DENIED.  This case is dismissed for failure to prosecute and for insufficient proof.  In the absence of a motion for review, the Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

Thomas L. Gowen
Special Master

6